20-2355, Karla Gilbertson v. Merrick B. Garland, et al. Good morning, your honors. May it please the court, counsel. My name is Jason Nielsen. I'm appearing today on behalf of my client, Karla Gilbertson, and we're petitioning this court to vacate and overturn the Board of Immigration Appeals' adoption of the immigration judge's decision in this matter. We are asking that this court uphold the continuity and consistency of law in its recent decisions in this circuit, starting with Marambo and then to the most recent decision, Shazi, in analyzing what constitutes a particularly serious crime under immigration law. And I would just note for the court that there is a moderate v. U.S. I believe it said it's 654 F3D 794. It's an NBANC decision from 2011 in this circuit stating it is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel. Counsel, let me ask you a question about that. Shazi was not decided in the context of an aggravated felony related to drug trafficking. So why wouldn't the matter of Y.L. still apply in that context? Thank you, Your Honor, for that question. Yes, that is true. Shazi was an assault case. Matter of Y.L., basically in 2002 the Attorney General decided a matter of Y.L. and listed and stated trafficking cases, there's a conviction for trafficking into presumptively particularly serious crime regardless of the sentence imposed. If there's five years regarding an aggravated felony, there's a presumption of particularly serious crime. If not, then it has to be argued here. In this case, there was not five years sentence imposed. The reason Shazi applies here and matter of Y.L., the issue of matter of Y.L. is it excludes from the get-go mental health concerns. And I think the Shazi court was very clear in stating that you cannot say that, or the court cannot say that mental health is never a concern. In matter of Y.L., explicitly, well, it doesn't say it, but by ignoring it explicitly excludes mental health issues. And in excluding the mental health issues which may have underlied the reason for committing the crime, that is arbitrary and capricious and the agency can't do that. And so therefore, matter of Y.L., by its, when Shazi found GGS to be arbitrary and capricious because of the exclusion of mental health issues, that logic applies here to matter of Y.L. Counsel, help me with the record here. Did you dispute the determination of the I.J. that her conduct qualified as a particularly serious crime? Yes, Your Honor, I did. It is at, and I will give you the exact sites. I begin on page 104 of the administrative record, goes through 105 into page 106 as I go, and I reference, I think the court, whoever typed the transcript, referred to matter of GG, which is supposed to be GGS, but I did argue the mental health issues. The court, the judge, immigration judge in that matter, had stated that no, she's not going to, she determined from the outset this is a cat-only claim because of... Did she continue that opposition through the BIA appeal? Yes, Your Honor, and the BIA further, it adopted the I.J.'s decision, so I would say that the I.J. actually didn't even address the matter of GG in the GGS, I'm sorry, in her decision, but I did, this was an argument throughout. Counsel for the DHS often objected during my questioning and throughout to my reference to her mental health, objected to evidence going in because he found it to not be relevant based on the matter of GGS, and his, you know, the court noted his objections as the administrative immigration judge often does, they admit to evidence and give it no weight, but I believe it should have been given weight. It was not considered by the court, the court only, the I.J. only looked to the factors announced or laid out in matter of YL, which exclude mental health issues, and I think that is arbitrary and capricious, especially... I don't believe Shazi, well, Shazi didn't address matter of YL, but I think the holding of Shazi in stating that it is arbitrary and capricious for the agency to exclude mental health issues in mitigating culpability in criminal convictions is the ruling, and I think that implicitly, not explicitly, but implicitly would rule matter of YL in that mental health has to be considered, and the fact that matter of YL does not do so makes it arbitrary and capricious in the same way matter of GGS is, and has been held by this 1231B3B, I believe it is, the attorney general may declare, I don't think declare is a word, but may state that, may make his own findings, his or her own findings as to whether or not a crime constitutes a particularly serious crime, but that has to also under Chevron be done under the color of law, it has to be done consistently and within the meaning of the statute under law, and so I don't know that the interpretation in matter of YL gets past the first step in Chevron, whether or not that's ambiguous is a question for the court, because the statute speaks that the attorney general is allowed to create a particularly serious crime, but there is restrictions on that, the attorney general can't tomorrow issue a decision finding, I think it would be somewhat ridiculous to say that jaywalking is now a particularly serious crime and exclude non-citizens from relief based on a jaywalking conviction, not to allude that drug trafficking is anywhere near jaywalking, but there has to be some acting within the color of law in this sense, and the fact that, again, the exclusion of mental health, which I think this case is a prime example of, we have a had no value on her life as a human being, she really did, she had no value to her own life, she said in testimony that everything she does is wrong, that her family and the world would be better without her, and this was undercut by, not to recite the whole record, but she was a victim of domestic abuse for a very, very long time, and that was the first time she was in removal proceedings, where she was granted VAWA, and then she became involved, she has codependency issues, and a host of mental health issues, and that led to her involvement with this other individual who was a member of a cartel, and she became hooked on methamphetamines for a decade, approximately, and was frankly used by the individuals as an object, I mean, she didn't realize she was a victim of rape when they would, when she would be passed out on drugs and be raped, she didn't realize that was and that when she was used, in this case, as kind of a conduit to get a car, and then hit with the first degree trafficking charge, you know, what is her culpability, what is her danger to society, I mean, there was a document in the record that says on page 393, she should have been civilly committed, that's what the proper punishment was in this case, that was a medical evaluation of her, and so I think that there is reason to believe that Matter of Wild does not pass muster under Chevron, and just to briefly touch on her Supreme Court, in the Kat claim, her credible testimony is sufficient to sustain the Kat claim. Here, I believe the idea that it was too tenuous a connection, there were too many stones to skip on to get to the fact she would be harmed on account of her actions in the United States by cartels who are ingrained in Mexican government, Mexican law enforcement, and I think she testified that she had these people on Facebook, they knew who she was, they knew who her family was, the IJ found she testified credibly, they had threatened her continuously when she was out of jail, they had made phone calls to her family, made phone calls to her herself when she was out of jail, her face was published in the paper in Austin, Minnesota, they knew who she was, she lost a significant amount of, I think it was $50,000 worth of narcotics and $50,000 in cash of the cartel, and that they were connected with the Mexican cartel, the Zetas in Mexico, and I think that the IJ's finding that there was not enough to sustain the Kat claim was not proper. And so I would, unless there's another question at this time, I would reserve the rest for Robb. Thank you, Mr. Wilson. Mr. Stalzer. Good morning, Your Honors, counsel, and may it please the court, my name is Robb Stalzer, I'm here on behalf of the AG. Your Honors, I want to start with the argument about matter of YL. Petitioner, my brother counsel, did not exhaust this argument before the board. The idea that matter of YL should be overturned was never brought to the board before, petitioner never challenged the determination under the matter of YL framework that petitioner had been convicted of a particularly serious crime. None of that was exhausted before, and none of it was actually brought in the opening brief here, all of that argument was waived. Counsel, what is the interaction of our Stasi case and matter of YL? I don't believe there is one, Your Honor, for the following reasons. In Shazi, of course, overturned matter of GGS, but matter of GGS has no relation to this case. Under this case, the immigration judge said, look, the attorney general has prescribed that in cases of drug trafficking crimes, this particular framework will apply. The presumption, a strong presumption, will apply that can only be overcome if certain mitigating circumstances are met. So that's the framework that the immigration judge applied, and matter of GGS didn't come into it. Could it be said that Shazi would require that that list of factors include mental health? No, because that's not what Shazi said. Shazi said that GGS was inconsistent with matter of NAM, which is a board decision that this court had previously upheld, saying, okay, for a particular serious crime determination, you've got to look at all the factors. Matter of NAM is also in a posit to this case. So you can't skip from Shazi back to NAM to then say, okay, well, the mental health challenges must be considered. This case is accepted from that whole framework, because even before matter of NAM came out, the attorney general came out with matter of YL and created this presumption. And it's not an irrebuttable presumption, but in this case, petitioner didn't rebut it. And I might add, there's no indication, especially under the framework that the attorney general set out, that consideration of the mental health challenges could overcome it. Let me put it this way. If we remanded to say, board, you need to take another look at this and consider the mental health factors, how or where would that change the matter of YL presumption? First, there's no dispute that this is a drug trafficking felony. So matter of YL applies on the top side. And then the next question, according to the attorney general, okay, the presumption can be overcome, but you have to show these six mitigating factors, then plus another consideration, right? That's what matter of YL said. Here, we never got to the plus other consideration. Instead, the immigration judge says, look, you cannot demonstrate because of the circumstances of the crime that these six mitigating factors are met. And therefore, it is presumptively a particular serious crime and you've failed to overcome the presumption. So the mental health challenges would never even come into it under the matter of YL framework. Counsel, what about the fact that the IJ did not rely on GGS and perhaps appropriately so, but the BIA did. Is that legal error? It isn't legal error. And for the reason, when we say the board did rely on matter of GGS, the board language was pretty specific and said, we're not persuaded to overturn GGS. That's not the same thing as, oh, we're applying GGS. And in fact, we know it's not because in this case, the board adopted and affirmed the immigration judge's opinion, which didn't apply GGS. Again, we never reach GGS here, the mental health conditions, because under matter of YL, the presumption applies and petitioner didn't overcome that presumption. So again, so Houshazi doesn't apply here to this case. It would be a different story, possibly, if an actual challenge had been made to matter of YL. Nobody's disputing that the attorney general had the authority to issue matter of YL. And again, that comes straight out of the statute, where it says he has an unqualified grant of permission to determine whether an alien has been convicted of a particular serious crime. And that's what the AG did in matter of YL. He said, look, these drug trafficking felonies will presumptively be, and it was a strong presumption. He said it would be very difficult to overcome. And nobody here is suggesting that matter, well, until today, nobody has suggested that matter of YL is not good law that is binding on the board and the immigration judges. Turning, if yours have no other questions about the particular serious crime determination, I do want to mention the torture claim that my brother counsel has raised. Here, the torture claim was conjectural. Petitioner said she feared Archie, this dealer that has been bringing the drugs up from Mexico, and she feared the Zetas. But she offered no reason to believe that she would ever come into contact with these people ever again. No reason to believe that they would find her in Mexico, that they would then torture her, or more likely than not then torture her, with the acquiescence or consent of a public official. She essentially presented a chain of hypotheticals and then pointed to the country conditions evidence and said, look, under the country conditions evidence, torture occurs, and sometimes public officials are involved. But that wasn't enough. That's why the immigration judge said, look, you've chained together this idea that if you're in Mexico, someone will hunt you down or find you, or that you'll come across these people, that they'll know you, that they'll want to retaliate against you, and that they'll be able to do so and be able to do so with some involvement or acquiescence of a public official. The evidence just didn't support that. It was all conjectural. And you can't qualify for torture relief based on a string of hypotheticals where they aren't each more likely than not to occur. And I'm not going to belabor the court's time. If there are no questions, we will rest on our briefs. I don't see any additional questions. Thank you, Mr. Stolzer. Thank you, Your Honor. Mr. Nielsen, your rebuttal. Thank you, Your Honor. I guess I would say that we have challenged Myra Weil throughout. Maybe I think we put the mental health aspect on the table from the outset, that this is not a crime where she is a danger, where she's not. The particularly serious analysis must include her mental health, is basically what we had said from the outset, that to exclude it would be arbitrary and capricious and not within the statutory framework provided by Congress, and that, yes, the Attorney General has the authority to issue decisions and declare what can be particularly serious conduct, but that is not unfettered authority. He does have to, you know, it can't be an arbitrary and capricious decision. And I think that the exclusion of such valuable evidence, immigration proceedings and criminal proceedings are different proceedings. That's recognized law in Padilla and Justice Alito's concurrence in that case. And I think you are, the inclusion now of the mental health evidence is key and paramount in the immigration case because criminal proceedings are different in nature in many ways. And so that the exclusion of such evidence by Myra Weil is improper. And so I think this case is a prime example of the dangerousness of Weil when you have someone who has been here since she was 11 or 13 years old and has just been victimized in a tragic way, in a really tragic way, who has attempted to take her life because of no value and saw herself as kind of an object. And excluding all that as to what happened and how she could better her life, deprived, you know, it just, the framework set up, it just, I don't think you could pass muster under Chevron. And I thank you for your time. Thank you, Mr. Nelson. Thank you also, Mr. Stolzer. The court appreciates both counsel's appearance and presentations that you've made to the court today. We will take the case under advisement. Counsel may be excused.